IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

IN RE:

ANGELA K. BISHOP,

    DEBTOR.

ANGELA K. BISHOP,

    PLAINTIFF,

vs.

GREEN TREE SERVICING, LLC,

    DEFENDANT.

BK 06-70762-CMS-13

AP 07-70015-CMS

### MEMORANDUM OF DECISION

This matter came before the court on debtor/plaintiff Angela K. Bishop's complaint asking the court to determine that the automatic stay of 11 U.S.C. § 362(a) was either still in effect; and/or, to reimpose the stay against creditor/defendant Green Tree Servicing, LLC's foreclosure attempt. The court has reviewed the facts in the context of applicable law, and holds that judgment must be entered **IN FAVOR** of the defendant; and **AGAINST** the plaintiff.

### FINDING OF FACTS

Debtor/plaintiff Angela K. Bishop's (Bishop's) complaint (AP 07-70015 Doc. 1) requested the court to enter an order determining whether or not the automatic stay had lifted in her pending bankruptcy case (BK 06-70762-CMS-13); and, if the stay had lifted, to reimpose the stay to prevent Green Tree, LLC's, (Green Tree's) foreclosure proceeding against her mobile home.

After a March 2, 2007 hearing, the court entered a preliminary injunction against the imminent foreclosure on the mobile home, the debtor's residence. By agreement of the parties, the court also set trial on the merits for March 8, 2007. Both parties appeared at the hearing where they were offered an opportunity to present witness testimony, and/or to offer evidentiary exhibits.

1

A review of the record showed that Bishop filed her Chapter 13 case on June 22, 2006, scheduling a 2001 Chandeleur mobile home as an asset in her list of personal property. She also claimed a homestead exemption in the mobile home. (BK Doc. 1) Bishop's schedules and plan indicated that she owed Green Tree a prepetition arrearage of $4,118.95, and stated a current mortgage payment of $675.00 per month due the creditor. Her plan proposed to cure the arrearage through plan distribution; and for the debtor to pay the current mortgage payments, beginning in July of 2006, directly to Green Tree.

On June 29, 2006 Green filed claim #1 as a secured claim for the prepetition arrearage in the amount of $4,351.24 for the months of January through June, 2006. Attached to claim #1 was a schedule showing that the current mortgage payment was $675.04 per month. No objections were filed to the confirmation of Bishop's plan and Bishop filed no objection to Green Tree's proof of claim. Bishop's confirmation order was entered on September 6, 2006. (BK Doc. 22)

October 10, 2006, Green Tree filed a motion for relief from the automatic stay and co-debtor stay. (BK Doc. 25) The motion raised the fact that Bishop was not Green Tree's customer although she lived in the mobile home. The contract is in the name of Samuel Bishop (See claim #1). Samuel Bishop is the estranged husband of Angela Bishop. He does not live in the home, but Angela Bishop and her three children reside there.

The motion, which was filed the month after confirmation, alleged that a post-petition arrearage had accrued for the months of August and September of 2006 totaling $1,168.88. An attached affidavit signed by Green Tree representative Lanny Culbertson stated that the current mortgage payments were $584.44, and were due on the 5th of each month. Culbertson's affidavit stated that the fair market value of the mobile home at that point was $35,691.00.

Bishop and Green Tree settled the dispute by an agreed order conditionally denying relief from stay, but including a "drop-dead" clause against future default on the direct payments. The court directed Green Tree's attorney to prepare the order. (BK Doc. 28, court notes on the November 7, 2006 hearing.) The order subsequently executed by the court was entered November 13, 2006. (BK Doc. 29).

Pursuant to the November 13, 2006 order, Green Tree was allowed to file a claim for $1,553.32 for the post petition arrearage and attorney fees. The settlement order further provided:

> 2. The Debtor will also resume making regular monthly mortgage payments(including principal, interest and insurance) as provided for in the Contract beginning with November 2006 payment direct to Green Tree.
>
> 3. Beginning with the November 2006 payment and continuing until July 2007, in the event the Debtor fails to make any payment of principal and interest as described in the preceding paragraphs of this Order by failing to make a regular monthly mortgage payment on the date it comes due per the terms of the Contract, then Green Tree will send a letter to the debtor, with a copy to debtor's attorney, notifying them of the default and if the debtor fails to cure the default within ten (10) days of the date of the notice of default letter, then relief from the automatic stay is hereby **GRANTED**, ...

On December 8, 2006, Green Tree's attorney wrote Bishop, with a copy to her attorney, stating that she was in default for failure to make her "full" November and December, 2006 payments and was past due $1,347.10 (including principal, interest, and insurance).(Debtor's Exhibit C to the complaint) The letter advised Bishop that she had until December 18, 2006 to pay Green Tree the $1,347.10 deficiency. Attached to the December 8, 2006 letter was a document indicating that principal and interest payments for November and December of 2006 totaled $673.55 per month.

At the March 8, 2007 trial on this AP, the debtor testified on her own behalf. Green Tree offered only documentary evidence.

Bishop testified that she received the default letter and went to pay by Western Union Quick Collect on December 18, 2006, but the place she used to pay Green Tree was closed. December 18, 2006 was a normal business day and she gave no evidence why the location she uses was closed or why she could not have used another location in order to make her payment within the deadline. She returned the next morning, December 19, 2006, and paid Green Tree by Western Union Quick Collect in the amount of $1,348.00. Green Tree did not return this payment to Bishop.

On December 20, 2006, Green Tree's attorney again wrote Bishop's attorney and advised him that Green Tree treated the stay as having lifted for failure to pay pursuant to the December 8, 2006 letter. The creditor then initiated the foreclosure process.

As a result of this, on February 28, 2007, Bishop filed this adversary proceeding (AP 07-70015) asking the court to halt the foreclosure temporarily until the dispute could be tried on the

3

merits. Her complaint asked the court to determine that she had not defaulted under the terms of the court's conditional stay order; or, in the alternative, to reimpose the stay on the equities.

The court tried AP 07-70015 on March 8, 2007, and took the dispute under submission for a decision following that hearing. The court's order temporarily halting the foreclosure proceeding has remained in place, pending final resolution.

## CONCLUSIONS OF LAW

This court has jurisdiction of Bishop's Chapter 13 case under 28 U.S.C. § 1334(a). The court has jurisdiction of this contested matter, a core proceeding hinging on interpretation of the court's own orders and records, pursuant to 28 U.S.C. § 1334(b). Jurisdiction is referred to this Bankruptcy Court by the General Order of Reference of the United States District Courts for the Northern District of Alabama, Signed July 16, 1984, As Amended July 17, 1984.

### I.

**The stay has lifted under the terms of the court's November 13, 2006 order.**

The parties stipulated that they entered into the November 13, 2006 settlement order conditionally denying the relief from stay. They further stipulated that the debtor was in default for the November and December, 2006 payments and that she received Green Tree's December 8, 2006 letter allowing her 10 days to pay $1,347.10. It was also agreed that the payment was not made within the 10 days as set out in the notice. Bishop having defaulted under the terms of the November 13, 2006 order, the stay lifted as of December 19, 2006.

### II.

**The facts in this case do not justify the court's use of
its equitable power to reimpose the stay.**

11 U.S.C. § 105(a) states the following:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

That section is a statutory institutionalization of the equitable powers bankruptcy courts/district courts sitting in bankruptcy exercised in former days under common law. See United States v. Swift & Co.,

4

Case 07-70015-CMS    Doc 17    Filed 04/10/07    Entered 04/10/07 15:06:35    Desc Main
Document      Page 4 of 7

et al., 286 U.S. 106, 114-16 (1932).

The Eleventh Circuit Court of Appeals, particularly beginning in mid-1990s, has supported a broad application of such powers, so long as the remedies are "necessary or appropriate" under Section 105(a), and do not conflict with other statutory provisions in the Bankruptcy Code itself.

> Sovereign immunity aside (for governmental entities under Section 106), §105 uses the broad term "any" which encompasses all forms of orders including those that award monetary relief. The term "any" should be given this broad construction under the "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect."... Therefore, the plain meaning of § 105(a) encompasses any type of order, whether injunctive, compensative or punitive, as long as it is "necessary or appropriate to carry out the provisions of" the Bankruptcy Code. ...

See Jove Engineering, Inc. v. I.R.S. (In re Jove Engineering, Inc., 92 F.3d 1539, 1554 (11th Cir., 1996).

See also Hardy v. United States (In re Hardy), 97 F.3d 1384, 1389-90 (11th Cir. 1996); and Morgan v. United States (In re Morgan). 182 F.3d 775, 789 (11th Cir. 1999).

The facts are not in dispute that Bishop is in default under the terms of the November 13, 2006 order. She was to cure her arrearage of $1,347.10 by December 18, 2006. She paid Green Tree $1,348.00 on December 19, 2006, which was retained by Green Tree. Under these facts, does equity require that the stay be reimposed?

Any equitable analysis must weigh the benefits of the debtor's retention of her home in a successful reorganization (a major policy goal under the Bankruptcy Code); against Green Tree's right to the most adequate protection possible of its in rem rights in the home (another major policy goal of the code).

The Bishop case is particularly complicated because she has no in personam liability or duty to Green Tree, increasing the creditor's potential risk. The only Bishop interest that can be protected in bankruptcy is an equitable right to remain in the home as necessary to completion of her plan. In this situation, Bishop wants to continue paying on the Green Tree contract debt to retain possession.

Bishop's plan proposed to pay 6 months of prepetition mortgage arrearage. Green Tree, as a matter of obvious economic expediency, filed claim #1 for prepetition arrearage for the months of January through June, 2006. Green Tree did not object to Bishop's payment of the prepetition arrears

5

through her plan and Bishop did not objection to Green Tree's claim. Green Tree's claim #1 states that the balance due on the five year old mobile home was $64,058.85. Green Tree's affidavit in its motion for relief from stay set out the value of the mobile home securing the debt at $35,691.00.

Justice Cardozo stated long ago that:

> We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though it was entered by consent. ... A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. ...

Swift Company, 286 U.S. at 114.

However, conditions must be such that continued enforcement of the injunction is inequitable. The Supreme Court in Swift was dealing with a consent order arising after years of complex antitrust litigation. The Court stated that:

> Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned.

Swift, 286 U.S. at 119.

Fed. R. Civ. P. 60(b)(5) (applied in bankruptcy by Rule 9024) also provides in pertinent part that a Bankruptcy Court may relieve a party from a final judgment if ".. [I]t is no longer equitable that the judgment should have prospective application. ..." Bankruptcy courts, as courts of equity, can reimpose the automatic stay in appropriate circumstances. See Westinghouse Credit Corp. v. Prime, Inc., (In re Prime, Inc.) 26 B.R. 556, 559 (Bankr. W.D. Mo. 1983).

However, as the Supreme Court pointed out in Swift, while the entering court has the power to modify, it must determine whether "enough has been shown to justify its exercise." Swift, 286 U.S. at 115. The court, in deciding whether or not to reimpose the stay (or codebtor stay under 11 U.S.C. § 1301) must balance the interests of the debtor and the creditor, never ignoring the rights of secured creditors to be adequately protected. Prime, Inc., 26 B.R. at 559.

Bishop was six months in arrears on her mobile home payment when she filed her Chapter 13 bankruptcy petition on June 22, 2006. Her plan proposed to remit to Green Tree current monthly mortgage payments beginning with the July, 2006 payment. Green Tree's motion for relief from the automatic stay reflects that she made the July, 2006 payment and then missed the August and

6

September payments. The parties settled the motion for relief from stay with the provision that Bishop was to begin again making current payments to Green Tree beginning with the November, 2006 payment. She defaulted on the November and December, 2006 payments resulting in the December 8, 2006 letter demanding payment of $1,347.10 by December 18, 2006. Bishop failed to pay by this date. Her failure to pay does not appear to be the fault of anyone other than herself.

Bishop defaulted four times in agreements to pay Green Tree during the year 2006. First she failed to pay the contract payments from January until June. Then she defaulted under the terms of the confirmation order. She next defaulted under the terms of the parties' consent order. Finally, she defaulted under the terms of the 10-day demand letter. She is not a party to Green Tree's contract and she is not the one at risk if there is a loss. The mobile home in this case has a value of approximately $35,700.00. The balance due Green Tree is approximately $64,000.00. Green Tree is the only party in this dispute at risk. The equities in this case do not justify the court granting a fifth chance to Bishop, a nonparty to the underlying contract.

## CONCLUSION

To the extent stated above, judgment must be entered **IN FAVOR OF THE DEFENDANT**, and **AGAINST THE PLAINTIFF** in AP 07-70015.

A separate order, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered separately.

**DONE and ORDERED** this April 10, 2007.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge